# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STANLEY ANDREWS, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO. CIV-07-005-KEW<br>) |
| MICHAEL J. ASTRUE,<br>Commissioner, Social Security<br>Administration, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## OPINION AND ORDER

Claimant, Stanley Andrews, pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, the Court AFFIRMS the Commissioner's decision.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment..." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his "physical or mental impairment or impairments are of such severity that he is not only

unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy..." Id. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. See 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term substantial evidence has been interpreted by the U.S. Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not reweigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also Casias,

---

[1]Step one requires claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See id. §§ 404.1521, 416.921. If claimant is engaged in substantial gainful activity (step one) or if claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity (RFC) to perform his past relevant work. If claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. See generally Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

933 F.2d at 800-01.

## Claimant Background

Claimant was born on May 29, 1959 and was 47 years old at the time of the hearing. He has an 11th grade education. Earlier in his life, Claimant worked as a forklift operator, truck driver, and front desk receptionist. Claimant alleges an inability to work on September 13, 2003 due to pes cavus with foot pain and swelling, high blood pressure, depression, and memory loss.

## Procedural Background

On February 9, 2005, Claimant filed for disability benefits under Title II (42 U.S.C. § 401, et seq.). and for supplemental security income pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, et seq.). Claimant's application for benefits was denied initially and on reconsideration. A hearing before ALJ Charles Headrick was held on December 5, 2005 in Sallisaw, Oklahoma. By decision dated September 20, 2006, the ALJ found that Claimant was not disabled at any time through the date of the decision. On December 7, 2006, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined Claimant retained the residual functional capacity ("RFC") to perform work that exists in significant numbers in the national and regional economies.

## Review

Claimant asserts that the ALJ erred in: (1) ignoring the combined severity of his mental impairments; (2) failing to include all limitations in hypothetical questions submitted to the
vocational expert; and

Vocational Expert ("VE"); and (3) failing to properly develop the record to properly assess Claimant's RFC.

### Severity of Mental Impairments

Claimant argues the ALJ erred by failing to consider the combined severity of his mental impairments. Specifically, Claimant contends the ALJ failed to consider the Global Assessment of Functioning ("GAF") score included in a report from Denise LaGrand, Psy.D.

Claimant was referred for a mental status examination with Dr. LaGrand on June 1, 2005. Historically, Claimant reported that he had applied for benefits based on disorientation, depression, social anxiety, paranoia and anger. He attributed his difficulty with performing work to "[b]eing undependable, dislike of dealing with people, and thinking others are talking about him".(Tr. 138). On examination, Dr. LaGrand found that Claimant's "speech was adequate for normal conversation. His vocabulary and word usage were adequate. He appeared to understand verbal instructions. Thoughts were organized, logical, and goal-directed. He evidenced some memory problems." (Tr. 139). Claimant "reported feeling as if other are looking at him and talking about him. Thought content expressed in the exam was characterized by mild paranoia. Based on the observations during the examination, he did not appear to be responding to unusual internal stimuli, and no indication of active psychotic thought process were observed." Id. Claimant "stated that his typical mood or affect is depressed, angry and anxious. Affect observed during the exam was appropriate. Current suicidal ideation was present with plan or intent." Id. "Reported symptoms of depression include difficulty sleeping due to foot pain and dreaming, a low energy level, feelings of hopelessness, fluctuating moods, depressed mood most days, loss of interests in previously enjoyed activities, and impairment in

4

social relationships." Id.  Claimant "was oriented to person, place, city, state, year, month, date, day of week, time, season, and situation. Contact with reality was good." Id.

Dr. LaGrand opined Claimant's judgement was fair with an estimated I.Q. in the low average range of 80 to 89. She found that "[t]here is not indication of organic impairment. Orientation and contact with reality were appropriate. Long-term memory was intact. Immediate and short-term memory was somewhat impaired. Abstract reasoning was appropriate. Emotional control was appropriate." (Tr. 141). Claimant was diagnosed with "Major Depression, moderate, Cognitive Disorder, NOS vs. Disassociative Episodes." Id. His GAF was assessed at 50. Id. In evaluating Claimant's adaptive functioning, he was "easily understood. No limitations in speech or language were observed. Mr. Andrews stated that visual difficulties affect his ability to read and write. He completed the written portion of the history with poor spelling, grammar, word usage, and penmanship." Id. Socially, Claimant's "interaction during the exam was appropriate." Id. No significant problems with persistence or pace were found. His cognitive function was consistent with his educational and job history, and his estimated I.Q., which is in the low average range. Memory problems appeared to interfere with the ability to function. His ability to understand, remember and carry out instructions was in the low average. (Tr. 142).

Psychiatric Review Technique forms were completed by Disability Determination Services ("DDS") physicians. Functional limitations included moderate restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence, or pace. (Tr. 154). Claimant's "[c]urrent psychological findings show that there is not indication of organic impairment. His orientation and contact with reality were

appropriate. His long-term memory was intact while his immediate and short-term memory was somewhat impaired. His abstract reasoning was appropriate and his emotional control was appropriate. He was cooperative, pleasant and relaxed during the MSE. His motor activity was normal as were his speech and vocabulary and work usage. His thoughts were logical, organized and goal-directed. No indication of any active psychotic thought process. He was alert and oriented. His fund of information was average. Has low average ability for simple calculation. His estimated IQ was in the low average range (80-89). He is able to perform simple routine tasks and follow simple to semi-complex instructions." (Tr. 156).

In his decision, the ALJ discussed the medical evaluation conducted by Dr. LaGrand which included a recitation of Claimant's GAF score. (Tr. 17). He concluded that Claimant had "mild restriction of activities of daily living; moderate difficulties in maintaining social functioning [the claimant reported difficulty getting along with others]; moderate difficulties in maintaining concentration, persistence or pace [Dr. LaGrand noted that the claimant was easily distracted and his ability to concentrate appeared below average]; and no episodes of decompensation, each of extended duration." (Tr. 18).

Without doubt, a low GAF is not conclusive on the issue of whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decision has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. See, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla));

Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, supra at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

Although the ALJ's decision did not include a specific discussion of the GAF score, the ALJ's discussion did provide substantial evidence to support the mental limitations he found. Further, on review, this Court finds the RFC assessment was consistent with the evidence in the record.

### Residual Functional Capacity Assessment

Claimant contends the ALJ's work capacity assessment is not supported by substantial evidence because he failed to properly develop the record. Claimant argues the ALJ had an obligation to obtain additional medical records from the treating physician, Dr. James W. Long, to demonstrate the full extent of the physical limitations resulting from a deformity of his foot.

Generally, the burden to prove disability is a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S.137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the

7

hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health and Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). The ALJ also has a duty to re-contact a medical source when an opinion does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.912(e)(1).

The medical evidence in this case documents Claimant's treatment with Dr. Long as a result of an injury to his left foot that occurred on June 30, 2006. Claimant initially presented for treatment complaining of pain in his left foot while walking across a level backyard. By history, Claimant stated he had continuing problems with his left foot which stemmed from "pes cavus and severe metatarsus primus varus that verges on a TEV deformity, although the hindfoot is not severely varused." (Tr. 184). Claimant stated that "[h]e has always walked on the lateral column of the foot" and "has had multiple sprains. He has had pain along the fifth metatarsal in the past, but he just has a lot of pain in his feet." (Tr. 184). On examination, Claimant was found to have "pes cavus, prominent metatarsus primus varus and an inclination to TEV deformity, although he is able to align his heel near satisfactory with slight dorsiflexion of his foot. He definitely has more forefoot deformity than he has hindfoot deformity. There is no ecchymosis over the fifth metatarsal. He is tender in the area of the shaft of the fifth metatarsal, but not elsewhere. Neurovascular status is intact. There is not definite swelling appreciated in the lateral column of the foot over the fifth metatarsal." (Tr. 184). "X-rays of the left foot and of the left ankle both in three views show the prominent metatarsus primus varus. There is a minimally angulated

fracture of the fifth metatarsal at the juncture of the proximal and middle one third. It is consistent with a Jones fracture. The fracture shows hypertrophic changes and callus consistent with a healing stress fracture. It does not have the appearance of a fresh fracture. There are no other fractures. There is prominent pes cavus. The ankle films show the varus inclination of the foot on the AP film. The ankle mortise is well maintained with a good joint space." (Tr. 185).

Dr. Long opined "[t]he deformity of the left foot is mirrored in the right foot but to a lesser degree. This deformity predisposes him to this type of problem and to recurrent ankle sprains. He is not tender over the sinus tarsi today. It must be presumed that the pop that he felt in his foot was an exacerbation of the fracture in this bone, but it appears to be an old fracture secondary to stress." (Tr. 185).

Claimant's treatment with Dr. Long involved the placing of a "short leg fiberglass cast that was designed to help put him in a neutral position form the TEV inclination of the foot." (Tr. 185). Claimant returned for treatment on June 12, 2006 at which time he was placed in another fiberglass short-leg walking cast. (Tr. 183). X-rays taken on June 29, 2006 showed a "[f]racture of the proximal fifth metatarsal. Fracture appears partially healed with callus. The fracture is in good alignment without displacement." (Tr. 181). On August 2, 2006, Claimant had "improved significantly". (Tr. 182).

Claimant was referred for a consultative physical examination with Dr. Baha Abu-Esheh on May 24, 2005. At that time, Claimant reported continuing problems with pain on the bottom of his feet. He had difficulty lifting anything. His left ankle was reported to sprain easily. He stated that he had problems when walking or standing for extended periods due to pain. Claimant reported that he had x-rays performed recently and was told that he had decreased bone

9

density. (Tr. 129). On examination, Claimant was noted to have a bony prominence on the lateral aspect of the left foot. Full range of motion was noted in all extremities with no tenderness present. (Tr. 131). Claimant's gait was found to be safe and stable with appropriate speed. He did not ambulate with the aid of assistive devices. No identifiable muscle atrophy was noted. Heel/toe walking was normal and tandem gait was within normal limits. Id. In assessing his impairment, Dr. Abu-Esheh opined that claimant needed further examination by an orthopedic surgeon to "better understand the anatomy and see if anything can help correct it." Id.

Here, the ALJ had sufficient information to be adequately informed of the extent of Claimant's medical impairments and the limitations imposed by those impairments. Further, the ALJ's RFC assessment is supported by substantial evidence.

**Hypothetical Questions Submitted to the VE**

Claimant asserts the ALJ erred at step five of the sequential evaluation by failing to include all of his physical and mental limitations in hypothetical questions submitted to the VE. Thus, Claimant contends the ALJ's determination he could perform work which exists in substantial numbers in the economy is not supported by substantial evidence. Specifically, Claimant argues the ALJ should have included restrictions resulting from the need to elevate his feet and take unscheduled bathroom breaks during the workday.

In a step-five denial of benefits, the burden of proof shifts to the government to establish the existence of jobs that a claimant could perform within the limitations determined by an ALJ. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). An ALJ may use a VE to determine whether a claimant's past work skills would transfer to a category containing the

exertional level that the ALJ has concluded that a claimant could perform.  Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991).  However, any testimony elicited by hypothetical questions that does not precisely relate all of a claimant's impairments cannot constitute substantial evidence to support a denial of benefits.  Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990). An ALJ's hypothetical questioning of a VE will provide an appropriate basis for a denial of benefits where the questions include all of the limitations ultimately included in the ALJ's residual functional capacity assessment.  Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000).

As previously discussed, the ALJ's RFC assessment, which did not include the need for elevated feet or frequent bathroom breaks during the workday, was supported by substantial evidence in the record. Thus, the ALJ did not err by failing to include these additional limitations in hypothetical questions submitted to the VE.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied, therefore the ruling of the Commissioner of Social Security Administration is AFFIRMED.

DATED this 7th day of November, 2007.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE